# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DANA ROMERO,<br>　　　　　Appellant,<br><br>　　　　v.<br><br>DEPARTMENT OF THE NAVY,<br>　　　　Agency. | DOCKET NUMBER<br>DC-0752-15-0045-I-1<br><br><br>DATE: July 18, 2016 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Sara McDonough, Washington, D.C., for the appellant.

Malcolm G. Schaefer, Cherry Point, North Carolina, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1　　　The appellant has filed a petition for review of the initial decision, which affirmed his removal for unauthorized removal of Government property. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. 5 C.F.R. § 1201.117(c).

the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2　　Prior to his removal, the appellant was an Air Conditioning Equipment Mechanic, WG-5306-11, at the agency's Fleet Readiness Center (FRC) East in Cherry Point, North Carolina. Initial Appeal File (IAF), Tab 1 at 1, Tab 4 at 42. The agency charged him with Unauthorized Removal of Government Property (five specifications) and proposed his removal. IAF, Tab 4 at 112-13. After considering his oral reply and the record evidence, the deciding official sustained four of the five specifications and determined that the sustained specifications justified the penalty of removal. *Id.* at 43-45. The appellant filed this appeal. IAF, Tab 1. The agency has since withdrawn all specifications except the fifth one, which states that the appellant "removed eight pieces of copper [heating, ventilation, and air conditioning] coils from FRC East controlled property without authorization." Hearing Compact Disc (HCD) (May 7, 2015) (withdrawing Specifications 1 through 3); IAF, Tab 4 at 113.

¶3　　After a 2-day hearing, the administrative judge found that the agency proved its remaining charge by preponderant evidence. IAF, Tab 35, Initial Decision (ID) at 3-17. The administrative judge rejected the appellant's contentions that the charge was unconstitutionally vague and that the agency deprived him of his right of due process. ID at 17‑19. The administrative judge

sustained the charge and found that removal was a reasonable penalty that promoted the efficiency of the service. ID at 19‑24.

¶4 The appellant filed this petition for review.[2] Petition for Review (PFR) File, Tabs 9, 23. On review, he asserts that the administrative judge made erroneous findings of material fact and did not properly conduct an analysis of witness credibility pursuant to *Hillen v. Department of the Army*, 35 M.S.P.R. 453 (1987). He asserts that, for this reason, the agency failed to meet its evidentiary burden. PFR File, Tab 23 at 4, 10‑18.

¶5 The following facts are pertinent to this appeal. The appellant's job duties included cleaning up after finishing installation and maintenance assignments, for example, removing scrap materials to the FRC East recycling facility or "scrap yard," or to another area for the collection of surplus materials known as the "lay down yard." IAF, Tab 14 at 51-52. The scrap yard is located on post, but it is necessary to leave and re-enter the post to access it. IAF, Tab 19 at 29. The lay down yard is also located on post. It is unlocked and accessible to anyone already on post. IAF, Tab 14 at 33.

¶6 In November 2013, the appellant was one of a group of employees who replaced condenser coils, compressors, and other components of the heating and cooling units located on the roof of Building 133. IAF, Tab 19 at 7. The required clean-up for this job included moving the old coil panels and other parts to the scrap or lay down yard for eventual recycling. IAF, Tab 14 at 51. At some point between November 2013 and February 15, 2014, the old coil panels were cut into approximately 36 pieces. *Id.* at 53. Employees used a crane to remove most of these pieces from the roof of Building 133. *Id.* at 51. In February, however, the

---

[2] The Board allowed the appellant to file a corrected petition for review to change certain citations and to delete two sentences in the original petition for review to which the agency had objected. PFR File, Tabs 9, 20, 22‑23. We have cited the corrected petition for review in this order. PFR File, Tab 23. The agency submitted a response to the corrected petition for review, and the appellant replied. PFR File, Tabs 24-25. We deny the agency's subsequent motion to strike the appellant's reply. PFR File, Tab 26.

appellant moved approximately eight remaining coil pieces into a penthouse on the roof of Building 133. IAF, Tab 17 at 23.

¶7      In February 2014, the agency became aware of the coil pieces remaining on the roof of Building 133 after two employees who were on the roof for another purpose discovered the coils. IAF, Tab 14 at 53, Tab 19 at 48. Later the same day, the appellant moved two of the coil pieces to an area behind Building 133. IAF, Tab 15 at 19. Suspecting that the appellant was planning to steal the remaining coil pieces, L.R., an agency official responsible for maintenance, asked K.T., the post Command Investigator, to conduct surveillance on the appellant. *Id.* at 48-49; IAF, Tab 22.

¶8      On the morning of February 23, 2014, K.T. and two other investigators began surveillance of the appellant. IAF, Tab 22 at 8-10. The investigators tracked the appellant's activities for most of the day, though there were times when they did not have a direct line of sight of him. IAF, Tab 14 at 33, Tab 19 at 63-66. They did not monitor or observe the lay down yard at all. IAF, Tab 14 at 33, Tab 19 at 85. They observed the appellant, however, using an electric cart to move approximately eight coil pieces to the exterior side of Building 139. IAF, Tab 15 at 21, Tab 19 at 63-64.

¶9      The appellant asserted that later that day, he placed the coil pieces inside a white Government van and attempted to drop the coils at the scrap yard, which was closed. IAF, Tab 15 at 23. He further asserted that he instead took the pieces to the lay down yard. *Id.* He asserted that, after he left the coils in the lay down yard, he left the post via the Main Gate driving the van. *Id.*; IAF, Tab 16 at 5. The investigators saw the appellant leaving the post in the van at 1:40 p.m. IAF, Tab 22 at 8-10, Tab 34 at 4. The appellant asserted that there were no coil pieces in the van at that time and that he drove the van directly to a nearby Shell station and filled the gasoline tank. IAF, Tab 16 at 13, 22, Tab 19 at 96. He returned to post at approximately 2:19 p.m. IAF, Tab 16 at 22, Tab 19 at 66.

¶10    K.T. approached the appellant upon his return and asked about the coils, which were not in the back of the van. IAF, Tab 19 at 66. The appellant explained that he had left the coils in the lay down yard earlier that day. *Id.* K.T., the appellant, and an agency maintenance supervisor, R.H., went to the lay down yard, where they did not find the coil pieces. *Id.* at 67; IAF, Tab 23 at 10. The ground also appeared undisturbed in the area where the appellant said he had placed the coils. IAF, Tab 19 at 67.

¶11    The coil pieces were never found. IAF, Tab 23 at 10. The appellant averred that he did not steal or sell the coils to a business that purchased scrap metal. IAF, Tab 16 at 13, Tab 20 at 76-78 (receipts and statements from local metal buyers). In sustaining the charge, however, the deciding official, J.G., stated that the appellant should have secured permission from his supervisor before moving the coils. IAF, Tab 14 at 35. J.G. explained that the appellant removed the coils from where they had been located on a Sunday and that removal of the coils "was not his tasking on that day." *Id.* at 36. The appellant averred otherwise, presenting testimony from a coworker that moving scrap materials to the recycling area was part of his job. IAF, Tab 19 at 7.

¶12    On review, the appellant challenges several of the administrative judge's findings of fact. PFR File, Tab 23 at 10-18. The most critical of those findings, which we consider here, is whether an agency security guard, F.D., saw the coil pieces in the van before the appellant left the post to purchase gas. *Id.* at 11-15. The administrative judge found it more likely than not that F.D. saw the coils in the van, ID at 12 n.2, which supported an inference that the appellant removed the coils from the facility when he left. In contrast, the appellant asserted that he left the coils in the lay down yard prior to leaving the post and that the coils were taken from the lay down yard by unknown persons before he returned later that day. ID at 14.

¶13    The appellant now argues that the administrative judge failed to apply the *Hillen* factors in determining which of the conflicting accounts was true. PFR

File, Tab 23 at 11-15. To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. *Hillen*, 35 M.S.P.R. at 458.

¶14     F.D. was one of the investigators tasked with surveilling the appellant on February 23, 2014. IAF, Tab 22 at 8-9. At about 1:26 p.m., he walked over and approached the parked van that the appellant was using and looked in the rear window, where he spotted several dark metal rectangular objects stacked in the cargo bay. IAF, Tab 19 at 64-65; HCD (May 7, 2015) (testimony of F.D.). F.D. testified that the objects "looked like car radiators"; were "dull," "flat," and "dirty" in appearance; and seemed to be made of oxidized aluminum. HCD (May 7, 2015) (testimony of F.D.). In recounting F.D.'s testimony, the administrative judge concluded that "the precise metallurgy of the coils is less important than the uniformly consistent words 'discolored,' 'dark,' and 'metallic' combined with the photographs [of the coil pieces] provided by [K.T.]," and that the agency established by preponderant evidence that F.D. had seen the coils in the van. ID at 12 n.2.

¶15     The appellant asserts that F.D. was unable in his testimony to positively identify the coil pieces in the van despite having seen photographs of them, IAF, Tab 4 at 152-54, and that he testified that the items he saw were made of oxidized aluminum, whereas the coil pieces were made of copper, PFR File, Tab 23 at 11-13.

¶16    The administrative judge, however, conducted a proper *Hillen* analysis of the testimony. The administrative judge did not ignore F.D.'s refusal to state with certainty that he saw the coil pieces in the van. Instead, he reasonably considered the significant consistency between the testimony of F.D. and K.T., and the photographs of the coil pieces in the record. ID at 12 n.2; *Hillen*, 35 M.S.P.R. at 458 (holding that the administrative judge should consider the consistency of the witness's testimony with other evidence). He also pointed out that the appellant admitted to placing the coils in the van. ID at 12. We additionally note that, because F.D. was retired at the time of the hearing, he had nothing to gain or lose from testifying truthfully. HCD (May 7, 2015) (testimony of F.D.). On the other hand, the administrative judge found much of the appellant's account of the events of February 23, 2014, to be inconsistent and improbable, and some of his behavior to be inexplicable. ID at 15-17; *Hillen*, 35 M.S.P.R. at 458 (holding that the administrative judge should consider the inherent improbability of the witness's version of events and the contradiction of the witness's version of events with other evidence). The administrative judge thus reasonably concluded that F.D. saw the coils in the back of the van.

¶17    Further, the administrative judge reasonably found that the appellant removed the coils from agency property without authorization. ID at 17. The appellant did not deny that he was under surveillance on February 23, 2014. He stipulated that he moved the coil pieces to the exterior wall of Building 139 using an electric cart and later returned to that building driving an agency van to remove the coils. IAF, Tab 27 at 5. He did not dispute that security personnel saw him on surveillance video driving the van to various locations on post and leaving the post at 1:40 p.m.[3] IAF, Tab 22 at 8-10, Tab 34 at 4. The appellant

---

[3] The agency used the appellant's cellular phone records to establish the time of his departure. IAF, Tab 34 at 4. Employees were required to contact security to open the gate when they entered and exited the post. HCD (May 7, 2015) (testimony of M.D., F.D.).

admitted that the coils were in his possession until at least 11:54 a.m.  HCD (May 8, 2015) (testimony of appellant).  He declined to affirmatively testify that he removed the coils from the van before leaving the facility, and he could not recall the precise time that he took the coils to the lay down yard.  IAF, Tab 4 at 168, 182; HCD (May 8, 2015) (testimony of appellant).

¶18    In contrast, F.D. saw items that resembled radiator fins in the van at 1:26 p.m.  HCD (May 7, 2015) (testimony of F.D.).  The van was under the surveillance of security personnel at various times between 1:26 p.m. and 1:40 p.m., when the appellant left the post.  HCD (May 7, 2015) (testimony of F.D., M.D.).  At 2:55 p.m., the coils were not in the lay down yard, where the appellant claimed to have taken them.  IAF, Tab 22 at 10.  The agency had no record of any submission of scrap copper for recycling during the relevant time period.  HCD (May 7, 2015) (testimony of D.G., A.K.).  It is thus reasonable to infer that the appellant removed the coils when he left the post to purchase fuel. Accordingly, we find that the administrative judge considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on credibility.  *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997); *Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987).  We will not disturb the findings of fact.

¶19    The appellant also argues that the administrative judge improperly deferred to the agency's penalty selection.  PFR File, Tab 23 at 18-24.  He asserts that the deciding official, J.G., based his decision on K.T.'s report that F.D. had seen the coils in the van and that F.D.'s testimony did not support such a conclusion.  *Id.* at 19.  Further, he asserts J.G. did not testify that he considered what the penalty should be if only one specification were sustained.  *Id.*  The appellant additionally argues that J.G. cited the unproven allegations upon which Specifications 1 through 3 were based as evidence of his guilt, suggesting that he had moved the coil pieces around the post to prepare for the ultimate act of removing them.  *Id.* at 20.

¶20    However, F.D.'s reluctance to state definitively that he saw the coils in the van does not devalue his hearing testimony or any information he offered K.T. during the investigation.  F.D. testified that he saw a stack of weathered metal fins in the van, and both K.T. and the administrative judge inferred that the fins were the coil pieces.[4]  ID at 12 n.2; HCD May 7, 2015 (testimony of F.D., K.T.). As for J.G.'s reliance on the evidence underlying Specifications 1 through 3, much of that information is also part of the factual predicate for Specification 5. As for the appellant's assertion that the single sustained specification justified a lesser penalty, we note that an agency only need prove a single specification of a charge for that charge to be sustained.  *Burroughs v. Department of the Army,* 918 F.2d 170, 172 (Fed. Cir. 1990).

¶21    The appellant additionally asserts that J.G. failed to properly weigh the *Douglas* factors, especially mitigating factors such as his consistently satisfactory performance evaluations; 13-year tenure with the agency, awards, pay increases, and promotion; and the fact that no disciplinary action had been taken against him since 2006.    PFR    File,    Tab 23    at 21-24;    *Douglas    v.    Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981).  He further asserts that J.G.'s assessment of his rehabilitation potential was based on false or unsubstantiated allegations and that he did not clearly explain why rehabilitation was impossible. *Id.* at 22.

¶22    The record shows that the proposing official set forth a thorough analysis of the *Douglas* factors in the proposal notice and that J.G. considered and adopted this analysis in full.    IAF, Tab 4  at 43-44, 114-18.   The proposing official specifically considered as mitigating factors the appellant's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability. *Id.* at 116, 118.  He found that the mitigating factors were outweighed by the aggravating factors, including the nature and

_____

[4] K.T. testified that the items F.D. saw were "consistent with" what a person examining the air conditioning coils might see.  HCD (May 7, 2015) (testimony of K.T.).

seriousness of the offense and the appellant's job level and type of employment. *Id.* at 114-16. He also noted the clarity with which the appellant was on notice regarding the importance of honesty and integrity in performing the duties of his position, and he considered an incident of prior discipline involving dishonest behavior. *Id.* at 114-17. He explained that he considered lesser penalties, but did not find one that would be sufficient to correct the appellant's behavior. *Id.* at 118. Accordingly, based on our review of the record, we conclude that the agency considered all of the relevant factors and exercised management discretion within tolerable limits of reasonableness.[5] *Douglas*, 5 M.S.P.R. at 306.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held

---

[5] The appellant also alleges that, because he did not remove Government property without authorization, there was no nexus between the penalty and the efficiency of the service. PFR File, Tab 23 at 19. He bases this argument on the fact that his job duties often required him to transport recyclable materials to the scrap or lay down yards. *Id.* Although the appellant was allowed to transport these items on post, however, he was not allowed to remove them without authorization. IAF, Tab 14 at 50-52. He thus failed to act with integrity regarding the Government property in his care. *Cf. Mertins v. Department of the Navy*, 61 M.S.P.R. 157, 159 (1994) (finding that removal was a reasonable penalty for unauthorized possession of Government property, where the employee took seemingly surplus items without making any serious inquiry regarding their ownership).

that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.